# The Philadelphia Trust, Safe Deposit and Insurance Co., Trustees, &c., *versus* Audenreid *et al.*

A. & Co., commission coal merchants, agreed to act as selling agents for a coal company for one year from January 1st 1873, upon a commission, and to advance the coal company $50,000, which, with the commission of fifteen cents per ton, was to be repaid out of funds in the hands of the firm arising from sales; the firm agreed to guarantee all sales on time and account for them as cash.　The Philadelphia Trust Co. guaranteed the firm against all losses by reason of advances made by it to the coal company to the extent of two-thirds of the amount advanced and not reimbursed.　The firm retained from the proceeds of sales during the year fifteen cents per ton, amounting to $8869.95; and also collected in 1874, as the proceeds of time sales, $9031.33. The coal company was insolvent on December 31st 1873.　In an action on the guarantee by A. & Co. against the Trust company,

*Held,* that both of the above sums were to be considered as repayments of the $50,000 advanced, and that the guarantors were only liable for two-thirds of the difference between the amount of these two sums and the whole amount advanced.

January 11th 1877.　Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.　WILLIAMS, J., absent.

Error to the District Court of *Philadelphia county:*　Of January Term 1875, No. 128.

Assumpsit by John T. Audenreid and others, trading as Audenreid, Norton & Co., against the Philadelphia Trust, Safe Deposit & Insurance Company, trustees under the will of William Richardson, deceased.

A case was stated for the opinion of the court, with leave to either party to sue out a writ of error in the same manner as if a judgment had been entered on a special verdict.

The plaintiffs are commission coal merchants in the city of Philadelphia.　The defendants, as trustees under the will of William Richardson, deceased, were, at the time of making the contract hereinafter stated, interested in two leases of coal mines, worked by the Oakdale Coal and Mining Company as mortgagees of said leases and as stockholders in said company.

Application was made to the plaintiffs to become the agents of

2 NORRIS—17

[Philadelphia Trust, &c., Co. v. Audenreid.]

that company to sell the product of the mines, and to make advances to enable the Oakdale company to conduct their operations. After the terms were settled, contracts were made, which are the contracts under which the plaintiffs claim, and copies of these are hereto attached and made part of the case.

On the 31st of December 1873 the contract terminated. The plaintiffs, up to that time, advanced to the Oakdale company, under the contracts, $50,000, of which there has been reimbursed to them the sum of $17,901.28, as particularly specified below, and their claim against the said Oakdale company amounted, therefore, to $32,098.72, which is admitted by said Oakdale company to be the correct balance due by said company.

The plaintiffs had given due notice to the defendants of the advances as made, and had otherwise complied with their contract. And the Oakdale Coal and Mining Company was, on the 31st of December 1873, insolvent, and has so continued. No notice was ever given by said defendants to plaintiffs to withhold and reimburse themselves according to provisions of third paragraph of supplemental agreement.

The plaintiffs had retained from the proceeds of the sales of coal consigned by the Oakdale Coal and Mining Company fifteen cents per ton, as stipulated in the contract, amounting to $8869.95.

And they had credited the "Oakdale company's advance account," in which the advance of $50,000 was kept on their books, with that sum as received month by month, resulting in a balance on that account, 31st December 1873, of $41,130.05.

They had also sold for the company coal on which there was due, but not received till after January 1st 1874, $9031.33, which they credited to the company as of 31st December, leaving the balance due as above, $32,098.72.

Neither the Oakdale company nor the defendants, however, had notice that the accounts of the plaintiffs were so kept.

If the guaranty of the defendants only extends to the two-thirds of the balance remaining unpaid, after deducting both of these sums, such balance would be $32,098.72, of which said balance the defendants have paid two-thirds—that is to say, $21,359.15—without prejudice to the plaintiffs to claim any further sum which they might be entitled to receive under any other construction of the contract which shall be judicially determined to be correct.

If the court shall be of opinion that the construction of the agreement under which the above payment was made is correct, and that the lawful claim of the plaintiffs on defendants only amounted to two-thirds of the unreimbursed advancement, being the sum paid by them, then judgment shall be entered for the defendants, with costs of suit.

But if the court shall be of opinion that the plaintiffs are entitled to apply either or both of said sums to the payment of the one-third

of the advances not guaranteed by the defendants, and to require the defendants to pay the two-thirds of the balance, *i. e.*, $50,000, remaining unpaid, without first deducting therefrom both of said sums or either of them, then judgment shall be entered in favor of the plaintiffs, for the amount which shall appear to be due upon the statement of the account, upon the principle which shall be decided by the court to be correct, with interest from December 31st 1873, and costs, according to the statements annexed, which give the amounts as thus ascertained in the three contingencies.

If the plaintiffs are entitled to apply both sums to the liquidation of their one-third of the advances, their aggregate is in excess of such one-third, and the balance to be paid by defendants would be as follows :—

| | |
|---|---:|
| Advances, | $50,000.00 |
| Credits, | 17,901.28 |
| | $32,098.72 |
| Deduct amount paid, | 21,399.15 |
| Balance still due would be, | $10,699.57 |

If the subsequent collections only are to be credited, the amount would stand :—

| | |
|---|---:|
| Advances, | $50,000.00 |
| Credits, | 9031.33 |
| | $40,968.67 |
| Two-thirds, | $27,312.44 |
| Deduct amount paid, | 21,399.15 |
| Balance still due would be, | $5913.29 |

If the fifteen cents only are to be credited :—

| | |
|---|---:|
| Advances, | $50,000.00 |
| Deduct, | 8869.95 |
| | $41,130.05 |
| Two-thirds, | $27,420.03 |
| Deduct amount paid, | 21.399.15 |
| Balance still due would be, | $6020.88 |

"MEMORANDUM OF AGREEMENT, made the 20th day of December,

[Philadelphia Trust, &c., Co. *v.* Audenreid.]

A. D. 1872, between the Oakdale Coal & Mining Company, of the first part, the Philadelphia Trust, Safe Deposit & Insurance Co., trustees under the will of William Richardson, deceased, of the second part, and Audenreid, Norton & Company, of the third part.

" The party of the first part hereby appoint the party of the third part their agents for one year, to receive and sell all the coal produced and sent to market from the mines of the party of the first part, and they covenant that all the product of the said mines shall be consigned to the party of the third part for sale.

" The party of the third part shall receive as compensation for their services a commission of fifteen cents per ton on all lump, steamer, and pea coal which shall be delivered by rail for city consumption or on the line of the road, and twenty cents per ton on all other coal consigned to them and sold.

" The party of the third part will make advances to the party of the first part to an amount not exceeding $25,000, as the same may be required, to be reimbursed out of proceeds of coal shipped under this agreement, after the 1st day of April 1873, at the rate of fifteen cents per ton.

" On all advances interest at six per cent. per annum shall be charged.

" They will also accept and pay all sight drafts of the party of the first part for tolls and other railroad charges on lateral roads, and also all freights and charges for transportation on the coal. The amount of these acceptances and the other charges and commissions shall be deducted from the monthly returns of sales.

" Settlements for coal shipped during the preceding month and sold shall be made on the Thursday preceding the third Saturday of every month with the treasurer of the party of the first part.

" The parties of the third part guaranteeing all sales, and when sold on time, cashing said sales as of that day, being allowed a rebate of interest for the term of credit not then expired. And in case the consigned coal has accumulated on the wharves at Richmond, and is not sold or delivered, the parties of the third part will advance two-thirds the market price of said coal (less freights paid) to parties of the first part.

" The parties of the second part hereby guarantee the parties of the third part against all loss by reason of all or any advances made under or in pursuance of this agreement, to the extent of two-thirds of the amount advanced and not reimbursed. Nor shall any failure to reimburse themselves out of funds in their hands affect this obligation : Provided further, however, that statements of advances made shall be rendered monthly to said parties of the second part at the time of settlement for coal sold, and that after notice given by the party of the second part the parties of the third part shall appropriate all funds then in their hands and moneys thereafter received to their own reimbursement and in discharge of this guaranty;

"This agreement shall take effect as to all coal shipped on and after the 1st day of January 1873, and shall continue one year." * * *

By a supplemental agreement made April 26th 1873, the plaintiffs agreed to increase their advances to $45,000; it was further provided therein as follows :—

"In order to prevent misunderstanding, it is hereby further agreed and provided, that the true intent and meaning of the original agreement, as well as of this supplemental agreement, is that until said party of second part gives to the said party of the third part notice to retain the fifteen cents per ton account sales for their reimbursement for advances, the said parties of the third part are to be at liberty to permit the parties of the first part to draw or use all funds in the hands of said party of the third part without affecting the position of said party of the second part as guarantee to said amount of two-thirds of the advance made.

"And further, that when said party of the second part shall or may give notice to the parties of the third part to withhold and reimburse themselves, that said parties of the third part shall be at liberty to apply any funds then or thereafter in their hands to discharge the unguaranteed portion of their claim against said parties of the first part; always, however, after notice given applying the fifteen cents per ton to liquidate the advances.

"And it is further agreed, inasmuch as the said original agreement terminates January 1st 1874, and said parties of third part may not wish to renew the same, that if, at the expiration of the year 1873, a balance of amount of advances is found to remain due to said parties of the third part, they shall have the right to demand and claim said balance from said parties of the first part, and in the event of default in the payment of the same by said party of the first part, to claim and recover from said parties of the second part such portion of said balance of advances as, according to the agreement and supplemental agreement, shall be covered by their guaranty."

By a second supplemental agreement it was provided that the plaintiffs' advances should be increased to $50,000.

The court below was of opinion that the rights of the parties were fixed by the insolvency of the Oakdale company on December 31st 1873, and that the liability of the defendants could not be varied by the subsequent collections, even though the plaintiffs credited them on the books as of that date, and entered judgment for the plaintiffs for $6020.87, under the last of the above tables.

Both parties took writs of error. The error assigned in this case was in substance that "the court erred in not holding that the guarantee of the plaintiffs in error extended only to two-thirds of the balance appearing due by the Oakdale company to the defendants in error, after deducting all sums received or in their hands at any time from or on account of that company."

[*Philadelphia Trust, &c., Co. v. Audenreid.*]

*R. L. Ashhurst* and *E. S. Miller* (*S. Dickson* with them), for the plaintiffs in error.—The time sales were to be considered as cash sales with a rebate of interest, and the amount of the time sales afterwards collected by the plaintiffs below must therefore be considered as a payment to them in reduction of the advances as of the time when they made the sales. The account showed that such was the plaintiffs' view of the transaction.

Even apart from this, these collections on account of time sales must be considered as reimbursements under the terms of the agreements; the guaranty extended only to two-thirds of the advances not reimbursed.

*A. S. Biddle* and *R. C. McMurtrie*, for the defendants in error.— The proper interpretation of the first and second agreements is that whatever funds the plaintiffs had in their hands at any time were (until notice, and thereafter, excepting the commissions) to be first applied to the extinguishment of the unguaranteed portions of the debt, and that if these funds were not sufficient to cover more than one-third of the advances, the defendants were to pay the remaining two-thirds.

Counsel on both sides argued also the question of the appropriation of payments.

Mr. Justice WOODWARD delivered the opinion of the court, May 7th 1877.

Of the three statements annexed to the case stated, setting out the claim of the plaintiffs below in each of the three alternative contingencies specified, the third was adopted by the District Court. The decision was based on the theory that the contract rights of the parties were fixed by the insolvency of the Oakdale Coal and Mining Company on the 31st of December 1873, and that the liability of the defendants could not be varied by the subsequent collections, even though the plaintiffs credited them on their books as of that date. As the subsequent collections amounted to $9031.33, the court held that the sum of $32,098.72, two-thirds of which the defendants had paid, was increased to $41,130.05, and entered judgment for $6020.87, in favor of the plaintiffs.

By the terms of the three agreements between the parties, the plaintiffs below stipulated that they would make advances to the Oakdale company to the amount of $50,000, to be reimbursed out of the proceeds of coal to be shipped to them, at the rate of fifteen cents per ton, which they were to retain. Under the original agreement of the 20th of December 1872, the plaintiffs were constituted agents to receive and sell the coal of the Oakdale company. Settlements were to be made on the Thursday preceding the third Saturday of every month, and when sales should be made on time, it was provided that they should be cashed as of that day, a rebate of

interest to be allowed for the term of credit not then expired. All sales, it was expressly stipulated, were to be guaranteed by the plaintiffs. The covenant on the part of the defendants was to guarantee the plaintiffs "against all loss by reason of all or any advances made under or in pursuance of this agreement, to the extent of two-thirds of the amount advanced and not reimbursed." Any failure of the plaintiffs to reimburse themselves out of funds in their hands, was not to affect the obligation; but they were required, after notice by the defendants, to "appropriate. all funds then in their hands and moneys thereafter received to their own reimbursement, and in discharge of this guaranty."

No essential change was made by the supplemental agreement of the 26th of April 1873, in the relations or rights of the parties. It was executed in order to define and explain the terms of the original agreement. Until notice by the defendants to retain the fifteen cents per ton for their reimbursement for advances, the plaintiffs were authorized to permit the Oakdale company to draw or use all the funds in their hands. After notice, they were to be at liberty to apply any moneys held or to be received by them "to discharge the unguaranteed portion of their claim; always, however, after notice given, applying the fifteen cents per ton to liquidate the advances." Any question that could arise under these clauses in the supplement, is aside from this inquiry, as the notice in contemplation was never given.

On the 31st of December 1873, the plaintiffs had credited the "Oakdale company's advance account" with fifteen cents per ton on the proceeds of coal sold to the amount of $8869.95, resulting in a balance due them of $41,130.05. They had sold coal for the company for which the sum of $9031.33 was due, but was not paid until after the 1st of January 1874. This sum was credited to the company as of the 31st of December 1873, leaving a balance of $32,098.72 owing to the plaintiffs. The defendants have paid two-thirds of this balance, $21,399.15, in discharge, as they allege, of their covenant of guaranty. The single question is whether or not they are subject to further liability.

By express stipulation, the plaintiffs guaranteed all sales they should make of the Oakdale company's coal. By stipulation equally express, they were to settle with the company's treasurer on the Thursday before the third Saturday of every month for the coal received and sold during the preceding month. They were to account for sales on time precisely as they were to account for sales for cash, except that a rebate of interest for the unexpired term of credit was to be allowed. It was indifferent to the coal company, therefore, and consequently equally indifferent to the defendants, whether the coal should be sold on credit or for cash. In either case the liability of the plaintiffs to account was fixed. The contract was for a single year, and terminated on the 31st of December

[Philadelphia Trust, &c., Co. *v.* Audenreid.]

1873. At that date the extent of the liability of the defendants depended on the state of the "advance account" between the company and the plaintiffs. Under the terms of the agreement, what sum remained to be reimbursed? The coal for which payment was received after the 1st of January 1874, had been sold in 1873, during the existence of the contract. And it was for coal sold— sold on any terms they might choose to make—and not for the money they received for it, that the plaintiffs were to account. And they were to account when the sales were made, and not when the price was paid. The guaranty of the defendants was "to the extent of two-thirds of the amount advanced and not reimbursed." On the 31st of December 1873, the plaintiffs had been "reimbursed" to the extent of $8869.95 by the fifteen cents per ton retained out of the proceeds of coal sold and settled for. This was the reimbursement fund specially designated in the original agreement. They had been paid $9031.33 by sales of coal, the price of which was afterwards collected. Why was not this payment reimbursement on the advance account? If the Oakdale company had paid the sum in cash, is it possible that the plaintiffs would have been entitled to apply it to the unguaranteed portion of their claim? To "reimburse" is to "pay back;" and the primary meaning of the word is to be imputed to it where that meaning is not controlled by contract stipulations. Here, it has not been so controlled, for the contingency of notice did not arise in which, under the first supplemental agreement, the plaintiffs were to be at liberty to apply any funds in their hands, except the fifteen cents per ton, to discharge the ungaranteed·one-third of their advances.

Under a construction of these agreements which seems obvious and unmistakable, there is no room for the introduction into the controversy of any question relating to the application of payments.

The judgment is reversed, and judgment is entered for the defendants below pursuant to the terms of the case stated, with costs of suit.